**Electronically Filed
Intermediate Court of Appeals
30490
24-MAY-2013
01:00 PM**

NO. 30490

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


PATRICIA MAHI, Plaintiff-Appellant,
v.
THE VARIABLE ANNUITY LIFE INSURANCE
COMPANY, Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
KONA DIVISION
(CIVIL NO. 09-1-187K)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Plaintiff-Appellant Patricia Mahi ("Mahi") appeals from the Order Granting Defendant The Variable Annuity Life Insurance Company's Motion for Summary Judgment, filed on December 7, 2009, and the Final Judgment in favor of Defendant-Appellee The Variable Annuity Life Insurance Company ("VALIC"), filed on April 28, 2010, in the Circuit Court of the Third Circuit.[1]

Mahi and her then-husband, Dennis E. Arms ("Arms"), entered into an Agreement Incident to and in Contemplation of Divorce ("AICD"), filed August 10, 1998, in anticipation of their divorce which was finalized on December 17, 1998. This appeal centers around the interaction between the AICD and Hawaii Revised Statutes ("HRS") § 560:2-804(b) and the effect the statute has on Arms's tax-sheltered annuity 403(b) account ("VALIC Account").

---

[1]    The Honorable Ronald Ibarra presided.

On appeal, Mahi argues that the Circuit Court erred in granting VALIC's motion for summary judgment ("MSJ") because (1) an express term in the AICD precluded application of HRS § 560:2-804(b), which the Circuit Court applied to revoke Mahi's rights as a beneficiary of the VALIC Account; and (2) Mahi presented proof that she and Arms did not have an adversarial relationship and that they had used Mahi's inheritance during their marriage, creating a dispute of material fact. Additionally, Mahi argues that the Circuit Court erred (3) by applying HRS § 560:2-804(b) retroactively.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mahi's points of error as follows:

(1) Section 2-804 of the 1993 Uniform Probate Code ("UPC") was adopted by the Hawai'i Legislature in 1996 and codified, in whole, as HRS § 560:2-804. Generally, enactment of section 2-804 of the UPC "reflects a legislative judgment that when the insured leaves unaltered a will, trust, or insurance-beneficiary designation in favor of an ex-spouse, the insured's failure to designate substitute takers more likely than not represents inattention rather than intention." Lawrence W. Waggoner, *Spousal Rights in our Multiple-Marriage Society: The Revised Uniform Probate Code*, 26 Real Prop. Prob. & Tr. J. 683, 699-700 (1992) (commenting on a substantially similar Oklahoma statute).

HRS § 560:2-804(b) adopts the aforementioned principle as a rebuttable presumption, stating, in pertinent part:

> (b) Revocation upon divorce or termination. Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the estate made between the divorced individuals before or after the marriage, divorce, annulment, between two former reciprocal beneficiaries before the termination of a reciprocal beneficiary relationship, the divorce or annulment of a marriage or the termination of a reciprocal beneficiary relationship:
>
> (1) Revokes any revocable:
>
> (A) Disposition or appointment of property made by a divorced individual or a former reciprocal beneficiary to the individual's

2

> former spouse or reciprocal beneficiary in
> a governing instrument and any disposition
> or appointment created by law or in a
> governing instrument to a relative of the
> divorced individual's former spouse or
> reciprocal beneficiary[.]

HAW. REV. STAT. § 560:2-804(b) (2006). Here, it is undisputed that the VALIC Account is a "governing instrument" and that a payment to a beneficiary under the VALIC Account is a "revocable disposition or appointment of property" under the statute.

Mahi argues that Paragraph 8.B of the AICD contains an express term contradicting Arms's presumptive intent to revoke Mahi's beneficiary status under the VALIC Account. Specifically, Paragraph 8.B states: "Each party agrees to maintain his or her own individual and/or group insurance policy with unrestrained freedom to designate the beneficiaries as each so personally desires." Mahi's argument before the trial court and on appeal, however, presupposes that the VALIC Account is an "insurance policy" such that it would be covered by Paragraph 8.B. The AICD, however, identifies the VALIC Account as Arms's "Hawaii Teacher's Retirement" in Paragraph 6.A, which itself disposes of his "pension or retirement," thus making it plain that the VALIC Account was a retirement account, not an insurance policy, and that Paragraph 8.B would not have addressed it.

It is undisputed that the VALIC Account is "a tax-sheltered *annuity* 403(b) account." Section 403(b) of the Internal Revenue Code relates to the taxability of beneficiaries of "annuity contracts" purchased by a § 501(c)(3) employer or a public school. 26 U.S.C. § 403(b) (1994 & Supp. III 1998); see also § 501(c)(3). "[A]n annuity contract is generally a contract issued by an insurance company that is considered to be an annuity contract in accordance with the customary practice of life insurance companies." Gordon O. Pehrson et al., *Tax Management: Annuities, Life Insurance, and Long-Term Care Insurance Products* A-3 (2000) (internal quotation marks and original brackets omitted). That is, "an annuity contract should provide for a series of payments, to be made for a fixed period of greater than one year or over an individual's lifetime, so that there is a systematic liquidation of the consideration

previously paid for the contract and the earnings thereon." *Id.*

Although annuities are frequently sold by insurance companies, "the sale of a product by an insurance company does not inevitably render the product insurance." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 261 (1995). Indeed, "[a]nnuities are not ordinarily considered to be 'insurance.'" 1 *Couch on Insurance* § 1:22, at 50 (3d ed. 2009). "An annuity contract differs materially from an ordinary life insurance contract in that it is payable during the life of the annuitant rather than upon any future contingency . . . ." *Id.* "Life insurance is a promise to pay a sum certain on the death of an insured, while an annuity is essentially a form of investment which pays periodically, during the life of the annuitant or during a term fixed by contract, rather than on the occurrence of a future contingency, such as death." 3B C.J.S. *Annuities* § 7 (2003).

Here, it is undisputed that Arms executed an Employment Agreement to Implement Purchase of a Tax-Sheltered Annuity, which indicates that beginning May 1995, Arms's basic monthly compensation would be reduced by 20% each month. According to the undisputed terms of the VALIC Account, VALIC agreed to "allocate Purchase Payments (less any charges) to one or more Investment Options selected by the Participant." The "Annuity Period" — the "time during which VALIC makes annuity payments" — begins at "the Annuity Date, whereupon the Participant may begin to receive payments. A participant could choose to "surrender the Participant Account before the Annuity Date for a cash payment equal to the Surrender Value" or to "withdraw a portion of the Accumulation Value in cash at any time before the Annuity Date." A beneficiary under the VALIC Account is simply the person or entity designated "to receive any benefits payable upon the Participant's death."

An examination of the terms leads to the conclusion that the VALIC Account is an investment vehicle, not an insurance

4

policy.[2/] Because Paragraph 8.B of the AICD only speaks about insurance policies and the VALIC Account is not an insurance policy, Mahi's argument that Paragraph 8.B contains an express term contradicting Arms's presumptive intent to revoke Mahi's beneficiary status under the VALIC Account is without merit.

(2) Mahi's second point of error is that the Circuit Court erred in granting VALIC's MSJ because Mahi presented "proof of the parties' non-adversarial relationship[] and the prior us[e] of [Mahi's] inheritance," creating a presumption that, or a genuine issue of material fact as to whether, Arms intended to keep Mahi as the beneficiary under the VALIC Account. The proof Mahi refers to is apparently her declaration attached to her motion for partial summary judgment ("MPSJ"). Mahi's arguments in support of her point of error are that (a) HRS § 560:2-804 "simply creates a rebuttable presumption against the existing beneficiary designation[,]" (b) marital partnership principles support Mahi's contention that Arms wished to keep Mahi as a beneficiary, and (c) the court should take into account the equitable considerations addressed in Mahi's declaration.

(a) Mahi's argument rests on the idea that presumptive revocation under HRS § 560:2-804(b) can be rebutted by extrinsic evidence of Arms's contrary intent. HRS § 560:2-804 is, indeed, a rule of construction, *see, e.g., Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1316-17 (10th Cir. 2003), which "applies to instruments executed before the [rule's] effective date unless there is a clear indication of a contrary intent." HAW. REV. STAT. § 560:8-201(b)(5) (2006). However, "where general provisions, terms or

---

[2/] Mahi had argued that HRS § 431:1-204 defines the "transacting of life insurance" to include "the granting of annuities." However, as the U.S. Supreme Court stated in *NationsBank of N.C.*, "[t]reatment of annuities under state law . . . is contextual." 513 U.S. at 261. While states "generally classify annuities as insurance when defining the powers of insurance companies and state insurance regulators," states have "resisted lump classification of annuities as insurance." *Id.; cf.* 1 *Couch on Insurance* § 1:22, at 50-51 (while annuities are not considered to be insurance, "statutes may classify annuity contracts as insurance contracts for purpose of taxing the company that sells them"). The Hawai'i Legislature, in defining "the transacting of life insurance" to include "the granting of annuities," appeared focused on the regulatory jurisdiction of the state and was not saying that life insurance and annuities are synonymous.

expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions must govern or control." *State v. Coney*, 45 Haw. 650, 662, 372 P.2d 348, 354 (1962), *overruled in part on other grounds by City & Cnty. of Honolulu v. Bonded Inv. Co.*, 54 Haw. 414, 507 P.2d 1084 (1973). Furthermore, "the express inclusion of a provision in a statute implies the exclusion of another[] in interpreting statutes." *Fought & Co. v. Steel Eng'g & Erection, Inc.*, 87 Hawaiʻi 37, 55, 951 P.2d 487 505 (1998).

Here, HRS § 560:2-804(b) does not provide for the presumption to be rebutted by extrinsic evidence of the decedent's intent, but rather, only by the express terms of a governing instrument, a court order, or a related contract. *See In re Estate of Spencer*, 60 Haw. 497, 499-500, 591 P.2d 611, 613 (1979) (holding that, under law then in effect, the testator's will is automatically revoked upon his marriage unless "provision is made in the will for such contingency"). As with the law in *Spencer*, HRS § 560:2-804(b) provides the exclusive method for countering the presumption of revocation, and extrinsic evidence of the decedent's intent is immaterial and irrelevant.[3/] Thus, the Circuit Court did not err in granting VALIC summary judgment.

(b) Mahi contends that she raised this argument in her MPSJ or her opposition to VALIC's MSJ. Mahi contends that she "further objected" by filing a notice of appeal from the Final Judgment. As VALIC points out in its answering brief, however, while Mahi generally appealed to equitable principles in

---

[3/] Even if the introduction of extrinsic evidence of intent were permitted, Mahi's Declaration does not contain a clear indication of contrary intent sufficient to counter the statutory revocation of Mahi's beneficiary status upon divorce. *See* HAW. REV. STAT. § 560:8-201(b)(5) (providing that a rule of construction or presumption in the Hawaiʻi UPC applies to instruments executed before the effective date "unless there is a clear indication of a contrary intent"). Mahi admits in her Declaration that Arms "didn't make any specific promises to [her] not to change the beneficiary designation after [they] were divorced[.]" The mere fact that Arms did not take affirmative steps to remove Mahi as a beneficiary does not rebut the presumption of revocation in HRS § 560:2-804(b). *See In re Estate of Lamparella*, 109 P.3d 959, 966 (Ariz. Ct. App. 2005) (the purpose of presumptive revocation "would be eviscerated if a former spouse could circumvent the automatic revocation effected by the statute by submitting self-serving testimony that the decedent spouse's inaction reflected an intention to revive his or her designation of the ex-spouse as the beneficiary").

her MPSJ and her opposition to VALIC's MSJ, she never presented an argument relating to marital partnership principles. Furthermore, filing a notice of appeal does not raise a new legal argument. Thus, the point is waived. *See Haw. Ventures, LLC v. Otaka, Inc.*, 114 Hawai'i 438, 500, 164 P.3d 696, 758 (2007) ("As a general rule, if a party does not raise an argument at the circuit court level, that argument will be deemed to have been waived on appeal[.]" (quoting *Kemp v. State of Haw. Child Support Enforcement Agency*, 111 Hawai'i 367, 391, 141 P.3d 1014, 1038 (2006) (internal quotation marks and original brackets omitted))).

(c) Mahi argues that the Circuit Court should have considered extrinsic evidence of Arms's intent because it would be inequitable not to consider it. The statutory presumption of revocation in HRS § 560:2-804(b), however, can only be rebutted by an express term in one of the applicable legal documents. A court cannot rewrite the AICD based on equitable principles. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (a court cannot "redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case"). Furthermore, the factual assertions in Mahi's Declaration do not raise a dispute of material fact as to Arms's intent. Thus, the argument is without merit.

(3) Mahi argues that the VALIC Account is not a governing instrument because (a) applying HRS § 560:2-804(b) in this case "violates the contracts clauses under the Hawaii and United States Constitutions," (b) HRS § 560:2-804(b) cannot apply retroactively, and (c) insurance policies are governed by the statutes in force when the policies are written.

(a) Application of HRS § 560:2-804(b) to Arms's beneficiary designation violates neither the Hawai'i nor the United States Constitutions.[4] Mahi argues that the application of HRS § 560:2-804 "so as to revoke Mr. Arms' designation of the Plaintiff as the beneficiary of the 1995 annuity" violates the

_____

[4] Contrary to Mahi's contention, and as observed by the Attorney General of the State of Hawai'i ("Attorney General"), there is no Contracts Clause in the Hawai'i Constitution.

7

Contracts Clause. Mahi essentially argues that HRS § 560:2-804 impaired *Arms's* contractual right under the terms of the VALIC Account to select a beneficiary, although neither VALIC nor Arms's estate asserts the claim.

Even if Mahi could assert Arms's claim in this fashion, *Freitas v. Admin. Dir. of Courts*, 104 Hawai'i 483, 485, 92 P.3d 993, 995 (2004), the argument fails. Arms's contractual rights under the terms of the VALIC Account were not impaired. HRS § 560:2-804(b) affects donative transfers, not contractual rights. *See Stillman*, 343 F.3d 1311, 1322. Therefore, the application of HRS § 560:2-804(b) in this case is not unconstitutional under the Contracts Clause of the U.S. Constitution.

(b) Any statute-based presumption against the retroactive application of statutes is overcome in this case by the express provision in HRS § 560:8-201(b)(5) ("Any rule of construction or presumption provided in this Act applies to instruments executed before the effective date unless there is a clear indication of a contrary intent.").[5/]

(c) As noted above, the VALIC Account is an annuity, not an insurance policy. Furthermore, the law affecting the beneficiary designation in the VALIC Account was that which was in effect when the beneficiary rights vested upon Arms's death.[6/] *Chang*, 42 Haw. at 536-37. Thus, Mahi's argument is without merit.

---

[5/] In addition, as noted by both VALIC and the Attorney General, there was in fact no retroactive application of HRS § 560:2-804. "[A] statute does not operate retroactively merely because it relates to antecedent events, or because part of the requisites of its action is drawn from time antecedent to its passing, but is retroactive only when it is applied to rights acquired prior to its enactment." *Emp's Ret. Sys. of the Territory of Hawaii v. Chang*, 42 Haw. 532, 536 (Haw. Terr. 1958) (citing 2 Story, *Constitution*, § 1398; 82 C.J.S. *Statutes* § 412)). Rights in a decedent's estate arise at the time of death and not before. *Id.* at 536-37.

[6/] Mahi's citation to HRS § 560:8-101(7) is inapposite. The statute actually states: "*Section 560:7-501* applies to governing instruments executed on or after June 24, 2005." HAW. REV. STAT. § 560:8-101(7) (emphasis added). HRS § 560:7-501 relates to trusts for domestic or pet animals. HAW. REV. STAT. § 560:7-501. The relevant statute is actually HRS § 560:8-201, which relates to the 1996 amendments to the Hawai'i UPC; subsection (b)(1) states that on January 1, 1997, "[t]he amendments made by this Act apply to any governing instruments executed by decedents dying thereafter[.]" HAW. REV. STAT. § 560:8-201(a), (b)(1). For this reason as well, Mahi's argument is without merit.

THEREFORE,

The April 28, 2010 Final Judgment and the December 7, 2009 Order Granting Defendant The Variable Annuity Life Insurance Company's Motion for Summary Judgment, filed in the Circuit Court of the Third Circuit, are affirmed.

DATED:  Honolulu, Hawai'i, May 24, 2013.

On the briefs:

Mark Van Pernis and
Gary W. Vancil
(VanPernis-Vancil,
Attorneys at Law)
for Plaintiff-Appellant.

Lennes N. Omuro
(Goodsill Anderson Quinn &
Stifel)
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge